IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  CR 02-1248-TUC-CKJ(BPV) |
| vs. ) | |
| ) | |
| BERENICE POARCH, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant's Motion to Dismiss Count 1 of Third Superseding Indictment for Vindictive Prosecution [Doc. # 394]. Additionally, Defendant has filed a Motion to Suppress Statements Obtained in Violation of *Miranda* [Doc. # 118] and a Motion to Suppress Physical Evidence [Doc. # 122].

1. *Factual and Procedural History*

At 7:38 a.m. on June 27, 2002, law enforcement officers executed a search warrant at the residence of Aaron Habben ("Habben") and Berenice Poarch ("Poarch"). Poarch exited the residence in her night clothes and was escorted by officers to the front porch. Poarch was advised that she could choose whether to stay or leave during the execution of the search warrant, but if she stayed she would not have free rein of the residence. Poarch chose to remain and was subsequently escorted into the living room. At some point, Poarch was permitted to change clothes. When Poarch requested to use the restroom, an officer accompanied Poarch into the restroom. Agent James C. Logan ("Logan") testified that he

1  spoke with Poarch during the execution of the search warrant. He advised Poarch that she
2  was not under arrest, that she was free to leave, but if she remained, she'd have to stay in a
3  certain area of the residence. Poarch was not advised of her *Miranda* rights. Poarch agreed
4  to cooperate with the investigation. Poarch advised Logan that she suspected Habben was
5  involved with drugs and Habben had opened some bank accounts and conducted transactions
6  from those accounts.

7  Logan testified that he and Inspector Curran explained consent to search forms to
8  Poarch. Poarch signed a consent to search her vehicle and a consent to search her wallet and
9  purse.

10  On July 24, 2002, the first grand jury regarding this case indicted several individuals,
11  but did not indict Poarch.

12  On February 5, 2003, the second grand jury regarding this case returned a superseding
13  indictment. This indictment alleged in one count that Poarch knowingly and willfully
14  conducted financial transactions and did knowingly and unlawfully aid and abet Habben in
15  the laundering of monetary instruments derived from the distribution of anabolic steroids.
16  The evidence before the grand jury included testimony from a witness that was not present
17  during an interview of Poarch. The witness testified that Poarch had said that Habben had
18  her open the accounts. On April 12, 2004, this Court dismissed this count because the count
19  listed five separate acts within the single count.

20  On April 14, 2004, the third grand jury returned a second superseding indictment. The
21  prosecutor returned to the grand jury because defense counsel argued successfully to the
22  Court that the single charge was duplicitous. This indictment charged Poarch with five
23  separate acts of money laundering and added the charge of conspiracy to money launder.
24  The testimony presented at the grand jury included that Habben and Poarch opened the
25  accounts for the receipt of money and international wire transfers. At a hearing on a motion
26  to compel, the AUSA stated that the postal inspector's report supported the assertion that
27  Habben had Poarch open the account – the report does not include that statement. At the
28  August 23, 2004 hearing, the AUSA indicated that a return to the grand jury was needed to

1  comply with *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 1590 L.Ed.2d 403 (2004), which had just
2  been decided, and that the information could be corrected. *United States v. Booker*, 543 U.S.
3  220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), was later decided so there was no need to return
4  to the grand jury.

5        On February 28, 2006, a fourth grand jury indicted Poarch on the same charges (five
6  counts of money laundering and one count of conspiracy); however, the conspiracy charge
7  of the second superseding indictment alleges the conspiracy period was from on or about
8  6/26/02 to 6/27/02 while the conspiracy period alleged in the third superseding indictment
9  was from a time unknown to 6/27/02.

11  2. *Motion to Dismiss – Timeliness*
12        The government asserts that Poarch's Motion to Dismiss is untimely.  However, the
13  government has cited no authority for this assertion.  Although Fed.R.Crim.P. 12 recognizes
14  that the Court may set a deadline for pretrial motions, this Court did not impose a deadline
15  in this case.  The Court finds the Motion was not untimely.

17  3. *Motion to Dismiss – Vindictive Prosecution*
18        "A prosecutor violates due process when he seeks additional charges solely to punish
19  a defendant for exercising a constitutional or statutory right." *United States v. Gastelum-*
20  *Almeida*, 298 F.3d 1167, 1172 (9th Cir. 2002).  Generally a defendant "must make an initial
21  showing that charges were added because the accused exercised a statutory, procedural, or
22  constitutional right." *Id*.  "'To establish a prima facie case of prosecutorial vindictiveness,
23  a defendant must show either direct evidence of actual vindictiveness or facts that warrant
24  an appearance of such.'" *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995),
25  *quoting United States v. Sinigaglio*, 942 F.2d 581, 584 (9th Cir. 1991), *overruled on other*
26  *grounds*.

27        A presumption of vindictiveness results "when the decision to file increased charges
28  directly followed the assertion of a procedural right." *United States v. Garza-Juarez*, 992

- 3 -

1  F.2d 896, 907 (9th Cir. 1993). However, during pretrial proceedings, particularly plea
2  negotiations, vindictiveness is not to be "'presumed simply from the fact that a more severe
3  charge followed on, or even resulted from, the defendant's exercise of a right.'" *Gastellum-*
4  *Almeida*, 298 F.3d at 1172, *quoting United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th
5  Cir. 2000). Here, the government returned to the grand jury due to a duplicitous indictment.
6  The new charge of conspiracy was not more severe but merely clarified the government's
7  case against Poarch. In addition, the charges resulted during pretrial proceedings and the
8  Court finds a presumption of vindictiveness does not exist.

9  However, Poarch also asserts that the AUSA's conduct before the grand jury supports
10 a finding of the appearance of vindictiveness. Where there is no direct evidence of an
11 expressed hostility or threat to a defendant for having exercised a constitutional right, a
12 defendant must make the initial showing that charges of increased severity were filed in
13 circumstances that give rise to an appearance of vindictiveness. *United States v. Gallegos-*
14 *Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1981). Indeed, "[i]t is the appearance of
15 vindictiveness, rather than the vindictiveness in fact, that controls." *United States v. Groves*,
16 571 F.2d 450, 453 (9th Cir. 1978). In effect, Poarch asserts that the AUSA's conduct in
17 having the allegedly false testimony (Habben had Poarch open the accounts) repeated before
18 the third grand jury only two days after this Court's hearing wherein the testimony was
19 discussed leads to the conclusion that the AUSA knowingly permitted false testimony to be
20 presented to the grand jury. Moreover, Poarch argues, that the reports do not support the
21 testimony that Habben had Poarch open the accounts for the receipt of money and
22 international wire transfers. The "appearance of vindictiveness results only where, as a
23 practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that
24 would not have occurred but for hostility or a punitive animus towards the defendant because
25 he has exercised his specific legal rights." *United States v. Frega*, 179 F.3d 793, 801 (9th
26 Cir. 1999), *quoting Gallegos-Curiel*, 681 F.2d at 1168-69. The government asserts that the
27 return to the grand jury was at the demand of Poarch and the AUSA was simply clearing up
28

1  the indictment. Further, the government argues that the testimony presented by the agents
2  was accurate.
3      Here, the new charge appear to have been filed in the routine course of prosecutorial
4  review. *See Gallegos-Curiel*, 681 F.2d at 1169. Moreover, the additional conspiracy charge
5  carries a lesser sentencing range than the original charges. The Court finds no appearance
6  of vindictiveness has been shown by the prosecutor's conduct before the grand jury.
7
8  4. *Prosecutorial Misconduct*
9      During the August 1, 2006, hearing, Poarch argued that dismissal was appropriate
10 because of prosecutorial misconduct. However, Poarch had not briefed that argument,
11 thereby precluding the government an opportunity to respond in writing and/or prepare for
12 the argument.
13     Moreover, to justify dismissal, Poarch must show that she was prejudiced by
14 outrageous governmental misconduct. *See U.S. v. Barrera-Moreno*, 951 F.2d 1089, 1091
15 (9th Cir. 1991) (stating "a district court may dismiss an indictment on the ground of
16 outrageous government conduct" under its "supervisory powers" or if the conduct "amounts
17 to a due process violation"); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263, 108
18 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (stating a "district court [has] no authority to dismiss
19 [an] indictment on the basis of prosecutorial misconduct absent a finding that [the
20 defendants] were prejudiced by the misconduct").
21     To warrant dismissal under the Due Process Clause as a result of prosecutorial
22 misconduct, a defendant must show that the structural protections of the grand jury have been
23 so compromised as to render the proceedings fundamentally unfair, allowing the presumption
24 of prejudice to the defendant. *U.S. v. Isgro*, 974 F.2d 1091, 1094 (9th Cir. 1992).
25 Alternatively, under the court's supervisory powers theory, the court may dismiss an
26 indictment for prosecutorial misconduct where the misconduct amounts to a violation of one
27 of those few, clear rules which have been drafted and approved by the court and by Congress
28 to ensure the integrity of the grand jury's functions. *United States v. Williams*, 504 U.S. 36,

1  46, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), *internal quotation, citation, footnote omitted*.
2  A defendant challenging an indictment must also establish that the violation "substantially
3  influenced the grand jury's decision to indict," or that there is grave doubt that the decision
4  to indict was free from the substantial influence of such violations. *Bank of Nova Scotia v.*
5  *United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), *citation, internal*
6  *quotations omitted*.

7  Here, the AUSA asserts that any incorrect information presented to the grand jury was
8  inadvertent. Furthermore, the additional conspiracy charge was simply the natural
9  progression of the case as a result of the defense challenge to the previous indictment.
10 Moreover, in issuing the Third Superseding Indictment, the grand jury was not influenced
11 by any alleged misconduct. The Court finds dismissal based on alleged prosecutorial
12 misconduct is not appropriate.

13

14 5. *Motion to Suppress Physical Evidence*

15 The evidence presented at the evidentiary hearing on May 23, 2005, indicates that
16 Poarch, after the initial securing of the residence, was not detained at the residence. Agent
17 Lisa Hartsell ("Hartsell") testified that she advised Poarch she was not under arrest and the
18 procedures that would be followed during the execution of the search warrant. Hartsell
19 informed Poarch that she was free to go or free to remain, but if Poarch remained she would
20 not have free rein of the residence. Agent Logan also testified that he had a similar
21 conversation with Poarch. Poarch chose to remain during the execution of the search
22 warrant. The Court finds that, after the initial securing of the residence (which lasted
23 approximately 5 -10 minutes), Poarch was not detained.

24 Even if Poarch had been detained, officers may detain a building's occupants while
25 a search warrant is executed as long as the detention is reasonable. *Michigan v. Summers*,
26 452 U.S. 692, 704-05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) ("If the evidence that a
27 citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an
28 invasion of privacy is justified, it is constitutionally reasonable to require that citizen to

1 remain while officers of the law execute a valid warrant to search his home."). A court is to
2 balance the law enforcement interests against the public's privacy interest in determining
3 whether a detention incident to a search is constitutionally reasonable. *Ganwich v. Knapp*,
4 319 F.3d 1115, 1120 (9th Cir. 2003). The Ninth Circuit has recognized that "detaining a
5 building's occupants serves at least three law enforcement interests: first, detention prevents
6 a suspect from fleeing before the police discover contraband; second, detention minimizes
7 the risk that an officer or an occupant might be harmed during the search; and third, detention
8 often expedites a search." *Dawson v. City of Seattle*, 435 F.3d 1054, 1066 (9th Cir. 2006),
9 *citing Summers*, 452 U.S. at 702-03, 101 S.Ct. 2587; *Ganwich*, 319 F.3d at 1120. The
10 United States Supreme Court recently confirmed that an officer has the authority "to detain
11 a building's occupants during a search so long as the officer conducts the detention in a
12 reasonable manner." *Dawson*, 435 F.3d at 1066, *citing Muehler v. Mena*, 544 U.S. 93, 125
13 S.Ct. 1465, 1470, 161 L.Ed.2d 299 (2005). Poarch was not handcuffed, was allowed to
14 remain in her own residence, and was allowed to move about (to the restroom accompanied
15 by an officer). The Court finds the officers' conduct was reasonable and any detention of
16 Poarch during the search was constitutionally permissible.

17 While Poarch voluntarily remained at the residence, Poarch signed a consent to search
18 her purse and wallet. Whether a consent to search has been voluntarily given is determined
19 "from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222
20 (1973). The government bears the burden of proving that the consent was freely and
21 voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d
22 797 (1968); *United States v. Shan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997). In *United
23 States v. Jones*, 286 F.3d 1146, 1150 (9th Cir. 2002), the Ninth Circuit identified five factors
24 to be considered in determining the voluntariness of a consent to a search. These factors
25 include the following: (1) whether a defendant was in custody; (2) whether the arresting
26 officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the
27 defendant was notified that she had a right not to consent; and (5) whether the defendant had
28 been told a search warrant could be obtained.

1    Here, Poarch was not in custody, had chosen to remain at the residence, and had
2  indicated that she wished to cooperate with the agents. The agents did not have their guns
3  drawn during the conversation, including the discussion regarding the consent to search, with
4  Poarch. Although Poarch had not been advised of her *Miranda* rights and there was no
5  testimony regarding whether Poarch was advised that a search warrant could be obtained,
6  Poarch was advised that she had a right not to consent to the search. Moreover, Poarch was
7  not threatened in any way to provide her consent. The Court finds that Poarch voluntarily
8  consented to the search of her purse and wallet.

10  6. *Motion to Suppress Statements Obtained in Violation of* <u>Miranda</u>

11    A custodial suspect's post-arrest statements given in response to interrogation is only
12  admissible in the government's case-in-chief if the statements are given after a knowing and
13  intelligent waiver of the suspect's *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 478-
14  79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Garibay*, 143 F.3d 534, 536 (9th
15  Cir. 1998) (citations omitted) ("For inculpatory statements made by a defendant during
16  custodial interrogation to be admissible in evidence, the defendant's 'waiver of *Miranda*
17  rights must be voluntary, knowing, and intelligent.'"). The burden is on the government to
18  show that *Miranda* rights were administered and that the defendant agreed to waive them.
19  *Miranda*, 384 U.S. at 475. Proof of waiver must be by a preponderance of the evidence.
20  *Colorado v. Connelly*, 479 U.S. 157, 168-69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

21    The obligation to "administer *Miranda* warnings attaches . . . 'only where there has
22  been such a restriction on a person's freedom as to render him "in custody."'" *Stansbury v.
23  California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (quoting *Oregon v.
24  Mathianson*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). To determine whether
25  a person is "in custody" under *Miranda*, "a court must examine all of the circumstances
26  surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a
27  "formal arrest or restraint on freedom of movement" of the degree associated with a formal
28  arrest.'" *Stansbury*, 511 U.S. at 322 (citation omitted). Factors to be considered in

determining whether a reasonable person would believe he was not free to leave include (1) the language used to summon the individual; (2) the extent to which the individual is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002), *quoting United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001), *cert. denied*, 122 S.Ct. 1117 (2002).

Prior to, during, and after the questioning, Poarch remained in her residence. This was after Poarch had been advised by both Hartsell and Logan that she was free to leave. Although Poarch was not allowed free rein of the residence, Poarch was permitted to change clothes and sit in the apparent comfort of the living room. The agents did not confront Poarch with any evidence of her guilt. Moreover, it appears that Poarch was not detained for a long time prior to her discussion with Logan. From the time of the beginning of the execution of the search warrant (7:38 a.m.) until the signing of the consent to search (10:10 a.m.), less than three hours had passed. Further, Poarch was not arrested that day by agents. The testimony of the officers establish that pressure was not used to detain Poarch. The Court finds that Poarch was not in custody. Therefore, the agents were not required to advise Poarch of her *Miranda* rights prior to questioning her.

Accordingly, IT IS ORDERED:

1. Poarch's Motion to Dismiss Count 1 of Third Superseding Indictment for Vindictive Prosecution [Doc. # 394] is DENIED;

2. Poarch's Motion to Suppress Physical Evidence [Doc. # 122] is DENIED, and;.

3. Poarch's Motion to Suppress Statements Obtained in Violation of *Miranda* [Doc. # 118] is DENIED.

DATED this 7th day of August, 2006.

_____
Cindy K. Jorgenson
United States District Judge